## CARPENTER v. METROPOLITAN LIFE INS. CO.*

### No. 16291.

Court of Appeal of Louisiana. Orleans.
April 20, 1936.

See, also, 182 La. 813, 162 So. 630.

L. R. Graham, of New Orleans, for appellant.

Sumter D. Marks, Jr., of New Orleans, for appellee.

McCALEB, Judge.

On February 21, 1934, Willie Carpenter filed a suit against the defendant company for certain disability benefits under a group policy of insurance No. 2000–G issued by the defendant in favor of employees of the Southern Pacific Company. The period for which benefits were claimed by him was from July 7, 1933, to February 7, 1934, and he reserved his right to claim such benefits as might accrue in the future.

The defendant answered admitting the issuance of the policy, but set forth as an affirmative defense that at the time the plaintiff was injured or disabled, the policy upon which the suit was brought had been canceled and superseded by another policy of group insurance effective July 1, 1933, and that the substituted policy contained no provision for the payment of disability benefits to the employees of the Southern Pacific Company.

On the trial of that suit and upon the evidence adduced by the defendant sustaining the affirmative plea that the policy sued on was not in existence at the time of the injury or disability, the lower court found for the defendant and dismissed the plaintiff's suit.

On appeal to this court the judgment of the trial court was affirmed in the case entitled Carpenter v. Metropolitan Life Ins. Co., 159 So. 467, wherein we held that the policy sued on was not in existence due to the previous cancellation of the same by the mutual consent of the plaintiff and defendant and the Southern Pacific Company.

Notwithstanding the finality of the judgment above referred to, plaintiff, on October 31, 1935, filed this suit against the same defendant, claiming disability benefits under the same insurance policy. The only difference between the previous suit and the one at bar is that the disability benefits here claimed are from March 7, 1934, to October 7, 1934, whereas in the first suit disability benefits were claimed from July 7, 1933 to February 7, 1934.

The defendant filed a plea of res adjudicata and offered in evidence in support thereof the entire record in the case No. 15087 above referred to.

The trial court maintained the plea and dismissed plaintiff's demand. From the judgment of dismissal, the plaintiff appeals.

Article 2286 of the Revised Civil Code provides:

"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between

the same parties, and formed by them against each other in the same quality."

■ Considering the requirements of the foregoing article in their inverse order for the purpose of determining the soundness of the plea of res adjudicata, it will be observed:

1. " * * * the demand must be between the same parties and formed by them against each other in the same quality."

We find with reference to this requirement that the exact situation here exists as in the prior case.

2. " * * * the demand must be founded on the same cause of action. * . * * "

The instant suit is for recovery of disability benefits on policy No. 2000–G resulting from injury and the prior suit was based upon the same policy for disability benefits growing out of the same injury.

3. " * * * the thing demanded must be the same. * * * "

Counsel for plaintiff claims that the thing demanded here is not the same as the thing demanded in the previous case because this suit is one for disability benefits accruing at times different from the benefits claimed in the other suit, and for this reason the three concurring requirements for maintaining a plea of res adjudicata are not present.

On the other hand, counsel for defendant asserts that the "thing demanded" in the prior suit was the right to recover disability benefits, and that in the instant suit the same right is sought to be enforced, which right is now barred by virtue of the prior judgment.

Plaintiff bases his contention chiefly upon two decisions of the Supreme Court, viz.: State ex rel. Collens v. Jumel, 30 La. Ann. 861 and State v. American Sugar Refining Company, 108 La. 603, 32 So. 965. These cases, it is asserted, preclude us from sustaining the plea of res adjudicata.

In order to solve the problem, it is essential to analyze the holdings in the foregoing cases.

State ex rel. Collens v. Jumel was a mandamus action on the relation of Judge Collens to recover salary as judge from April, 1873, to November, 1876. He had previously filed a similar proceeding for salary from December 31, 1872, through March 21, 1873, and that suit was defended by the Attorney General upon the ground that the court to which Judge Collens had been elected had been abolished by the Legislature. The attack there was leveled at the constitutionality of an act of the Legislature and the court held, in dismissing the suit, that the act was constitutional. See State ex rel. Collens v. Clinton, 26 La.Ann. 406. In the second suit the Attorney General filed a plea of res adjudicata, and the court, in holding that the plea was not tenable, said:

"The relator has carefully excluded from his present demand the salary for the two quarters, which formed the object of the demand in the first suit, and upon which there was an adjudication. It seems more probable that, on the part of the respondent, a plea has been confounded with a principle, and that in pleading the judgment in the previous case as an estoppel, he meant rather that the principle or ruling made by this court, as then constituted, was conclusive of the right of the relator, or his want of right, on the principle of stare decisis."

The court based its conclusion upon two premises: First, that the object (i. e., thing demanded) of the second suit was not the same as that demanded in the initial suit, inasmuch as the salary sought to be recovered was for a different period; and, second, that the respondent had confused the principle of res adjudicata with that of stare decisis.

The leading case on the question of res adjudicata is that of State v. American Sugar Refining Company, supra. There the state brought an action to recover license taxes from the defendant for the years 1900 and 1901 under section 11 of Act No. 171 of 1898.

The defendant filed an answer pleading that it was a manufacturer and that as such it was exempt from license taxation by the terms of the Constitution of the state.

To this the state filed a formal plea of res adjudicata based on a former suit wherein the license for 1898 and previous years had been claimed and the same defense of exemption from taxation had been urged.

The opinion, written by Mr. Justice Provosty, discusses at length the requirements necessary in order for a plea of res adjudicata to be tenable. The court makes a distinction between cases where the ob-

ject of the demand was previously decided upon a question of law and cases where the thing demanded was adjudicated upon questions of fact. The dismissal of the plea of res adjudicata in the American Sugar Refining Company Case was upon the ground that whether or not the defendant was a manufacturer within the meaning of the constitutional exemption was solely a question of law and not one of fact. On page 607 of 108 La., 32 So. 965, 966, of the opinion it is stated:

"It is undeniable that the issue as to whether or not defendant is a manufacturer does occur in both cases, but this issue, as we shall show presently, *involves only a question of law, and there can be no objection to litigating a second time a question of law, provided the litigation is in connection with different facts.*" (Italics ours.)

Again, on the same page, it is said:

"The basic principle of res judicata is found in the necessity that a time should come when the litigation shall cease, in order that the decree of the court may be carried out."

And again, 108 La. 603, on pages 608 and 609, 32 So. 965, 967, the court says:

"We said we would show that the issue as to whether defendant is a manufacturer *is not an issue of fact, but of pure law.* * * * It is not as to whether defendant is a manufacturer, but as to whether a refiner of sugar is exempt, or not, from license taxation. The statute, in imposing the license, has used a specific term of definite meaning, applicable to defendant's class and to no other class, namely, the term 'refiner of sugar'; and the constitution, on the other hand, in granting the exemption from taxation, has used a generic term of indeterminate meaning, namely, the term 'manufacturer,' which may or may not be applicable to defendant's class. Hence the controversy. Defendant claims that the statute is inconsistent with the constitution, and plaintiff insists that it is not. * * * The matter involved is the interpretation of the constitution,—*a matter of pure law.*" (Italics ours.)

The opinion reckons the distinction between res adjudicata and stare decisis by an apt example which is set forth, 108 La. 603, on page 613, 32 So. 965, 969, and which we believe is controlling as to the result to be obtained here, viz.:

"If I break my neighbor's fence, and to his suit for damages I plead the nonexistence of any law subjecting me to pecuniary liability in such a case, and the day after being cast in the suit I break the fence again under circumstances exactly similar, and another suit ensues, there will be as close identity between the two suits as between two suits for the taxes of different years; but we imagine no one would think of applying the law of res judicata to the second suit. If, however, in the first suit, instead of confining myself to denial of plaintiff's claim, *I set up an independent right, justifying my conduct, as that I am owner of the fence in question, or that I have by contract the right to break said fence, then, as a matter of course, as to this defense, if again set up in the second suit, there would be res judicata; but the reason would be that, while urged as a defense, this claim of right would in reality be a demand brought by way of reconvention.* I should, pro hac vice, have ceased to be defendant and become plaintiff; and the necessary feature of identity of demand in the two suits would be presented." (Italics ours.)

Now, in the case at bar the plaintiff in the first suit demanded from the defendant certain disability benefits alleged to be recoverable under a policy of insurance and reserved his right to claim benefits which might accrue in the future. The defendant appeared and admitted that the policy sued on had been issued and filed an affirmative defense, viz., that the policy had been canceled, and, as a consequence thereof, no benefits, present or future, were recoverable thereunder. This defense is similar to a reconventional demand and the burden was on the defendant to prove the facts constituting it by a preponderance of the evidence. The case was heard and decided on this issue and the defendant prevailed. The result of that decision was to adjudicate forever the claims of the plaintiff for disability benefits upon that particular policy of insurance. The court had for determination a simple question of fact, i. e., whether or not the insurance policy had been canceled prior to the time when the plaintiff became disabled, and its decree is res adjudicata as to subsequent benefits claimed by the same plaintiff.

On the other hand, if the defense in the first suit had been that the insurance company was prohibited by law from writing

such a policy and the court had determined the rights of the parties on that plea, the matter might have been again litigated as to subsequent benefits, for, following the language of Justice Provosty in the American Sugar Refining Company Case, supra, "there can be no objection to litigating a second time a question of law, provided the litigation is in connection with different facts."

The recognition of the line of demarcation in the application of res adjudicata is not only clearly set forth in the American Sugar Refining Company Case, but is thoroughly discussed by the French authorities. See Code Civil, Ed. Fuzier-Herman (1896), vol. 3, pp. 580, 584; Cours Elementaire de Droit Civil Francais by V. Marcade (1851), vol. 5, pp. 157, 159; Demolombe, vol. 30, n. 304; Huc, vol. 8, p. 408; Carpentier et du Saint, vol. 2, p. 92. In the last-mentioned work the following quotation appears from Aubry et Rau, vol. 8, p. 399:

"For a clear comprehension of the matter of 'the identity of the object', it should be remarked that in laying down the principle of the authority of the thing adjudged, the legislator has not merely wished to prevent the return of a suit already declared; he has wished also to avoid as far as possible any contradiction between two judicial decisions.

"It should be laid down in principle that if a right has been affirmed or denied in a suit, there would be the necessary identity of object, if in a new suit there is put into question the same right, even though the dispute be as to a consequence which has not been passed upon in the original suit.

"For example, I bring suit to recover the ownership of an immovable and obtain judgment. In a subsequent suit there may not be denied to me the accessions and the fruits on the pretense that I am not the owner.

"Assuming the title of heir, I bring suit for the payment of a debt; my adversary pretends that he is an heir of the decedent, and consequently that confusion has barred the debt which formerly existed. The court declares that I am the heir and consequently condemns the defendants to pay me the sum that I claim. *If later I bring a new suit against the same person to recover a house belonging to the succession, the defendant would not be permitted to contest my quality as heir; I have the right to insist that there exists in each case an identity of object. It is true that in the first suit I claimed only a sum of money and that in the second I claim the house; but the two suits have put into play the same right, my right as heir; and the two instances in truth present the same object."* Citing Bonnier, n. 869; Larombiere, art. 1351, n. 86; Colmet de santerre, vol. 5, n. 328; Demolombe, vol. 30, n. 303; Garsonnet, vol. 3, p. 251; s. 467; Griolet, p. 104. (Italics ours.)

We deem it of vital importance to the administration of justice that litigation between the same parties upon the same cause of action, having in view the recovery of a certain object, viz., disability benefits, should come to an end where it has been previously determined, because of a factual defense invoked, that no benefits at all may be recovered.

█ It is settled by the jurisprudence that a court has the right to reconsider questions of law previously determined between the same parties, provided that the thing demanded has come into existence at a different time from the thing demanded in the prior litigation.

█ But, where the dispute has been determined on questions of fact, the principle of res adjudicata precludes the court from entertaining it again, even though the thing demanded may not be identical with relation to the time of accrual as the thing demanded in the first suit. If it were otherwise, actions involving the same subject-matter between the same parties relating only to questions of fact might be brought and tried over and over again to the harassment, expense, and disadvantage of the litigant who was successful in the first instance.

The decisions of Succession of Marinoni, 183 La. 776, 164 So. 797, Scovel v. Levy's Heirs, 118 La. 982, 43 So. 642, and Richardson v. Trustees Loan & Guaranty Co., Inc., 10 La.App. 363, 120 So. 890, cited by the plaintiff, are inapposite.

We find that the plea of res adjudicata here presented contains the three concurring elements necessary for its successful invocation, and that the trial judge was correct in sustaining it and in dismissing plaintiff's suit.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.